## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:23-cr-00079-MR-WCM-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| LOWNEY YOHNAGALEGI CROW, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's "Motion to Suppress and Memorandum in Support (Closed Bag)" (the "Motion to Suppress-Bag," Doc. 27) and Defendant's "Motion to Suppress and Memorandum in Support (Hotel Rooms)" (the "Motion to Suppress-Hotel Rooms," Doc. 28), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.       Relevant Procedural Background

On October 3, 2023, a Bill of Indictment was filed charging Lowney Yohnagalegi Crow ("Defendant") with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Doc. 1. Defendant was subsequently arraigned.

1

On December 5, 2023, a Superseding Bill of Indictment was filed. Doc. 12.[1]

On December 12, 2023, Defendant was arraigned and entered a plea of not guilty.

On February 12, 2024, Defendant filed the Motion to Suppress-Bag and the Motion to Suppress-Hotel Rooms. Docs. 27, 28. The Government responded to both Motions, Docs. 32, 33, and the undersigned conducted a hearing on April 19, 2024. During that proceeding, the parties were allowed to present evidence regarding the Motion to Suppress-Bag and arguments regarding both Motions.[2] Following the hearing, the parties submitted additional briefing. Docs. 39, 40, 42.

This Memorandum now follows.

## II.  The Motion to Suppress-Bag

### A. Factual Background

"When material facts that affect the resolution of a motion to suppress… are in conflict, the appropriate way to resolve the conflict is by holding an

---

[1] The Superseding Indictment corrected an error in the original Bill of Indictment. No additional charges were included.

[2] Because the Motion to Suppress-Hotel Rooms seeks the suppression of evidence seized pursuant to a search warrant that Defendant argues lacked probable cause, an evidentiary hearing on that Motion was not necessary. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996); United States v. Griffin, 811 F. App'x 815, 816 (4th Cir. 2020) (per curiam) (stating that "an evidentiary hearing is not always required to resolve a motion to suppress").

evidentiary hearing after which the district court will be in a position to make findings." United States v. Taylor, 13 F.3d 786, 789 (4th Cir. 1994). In doing so, the court determines "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." United States v. Gualtero, 62 F. Supp. 3d 479, 482 (E.D. Va. 2014) (citing United States v. McKneely, 6 F.3d 1447, 1452-53 (10th Cir. 1993)).

### 1. The Evidence Presented

At the hearing, the Government called Sergeant Chase McCraw of the Shelby Police Department.[3] The Government also submitted, without objection, the following exhibits: (1) Cleveland County Detention Center Policy 2.07, "Confiscation and Search of Property"; (2) a Receipt for Evidence and/or Property; (3) Shelby Police Department Standard Operating Procedure 400-15, "Search and Seizure"; (4) Shelby Police Department Standard Operating Procedure 400-13 regarding Department Property/Evidence facilities; (5) a portion of the body worn camera footage of Officer Caleb Camp; and (6) a portion of the body worn camera footage of Officer McCraw.

Defendant submitted the entirety of Officer McCraw's body worn camera footage.

---

[3] At the time of the events in question, Sergeant McCraw was an officer and therefore is referred to in this Memorandum by his rank at that time.

## 2. Factual Findings

Based on the information of record and as presented during the hearing, the undersigned finds the relevant facts to be as follows:

On February 23, 2023, a warrant was issued for Defendant's arrest in connection with a misdemeanor hit and run that had allegedly occurred the day before. Defendant was located by law enforcement at the Governor's Inn in Shelby, North Carolina and Officer McCraw observed Defendant walking back and forth between two rooms, which were later identified as Rooms 127 and 225 (the "Hotel Rooms").[4]

At approximately 1:10PM, Officer McCraw, accompanied by Officer Camp and Sergeant Dan Bernat, knocked on the door of Room 127. A female occupant of the room, who was later identified as Ronda Timmons, opened the door. Officer McCraw saw Defendant inside, informed him of the warrant, and entered the room.

Officer McCraw immediately arrested and handcuffed Defendant. In doing so, Officer McCraw removed what appeared to be a hotel room key card from Defendant's hand and put it on a nearby table.

After Defendant was handcuffed, Officer McCraw checked Defendant's waist area and noticed a long black string that appeared to be tied to the

---

[4] The doors to both Hotel Rooms opened to the outside and not to interior hallways.

4

drawstring in the front of Defendant's shorts. Officer McCraw followed the string around Defendant's body, ultimately pulling the string up and out from inside the back of Defendant's shorts. To the end of the string was tied a purple and gold "Crown Royal" bag (the "Bag") that had been concealed inside Defendant's clothing. The Bag appeared to be closed by means of a drawstring, but the drawstring was not knotted or otherwise secured.

While Defendant stood with his hands cuffed behind him, Sergeant Bernat cut the black string and detached the Bag. Officer McCraw escorted Defendant out of the room and Sergeant Bernat had Defendant sit on the sidewalk. Sergeant Bernat and Officer Camp stayed with Defendant while Officer McCraw, who was still holding the Bag, went back inside Room 127.

Officer McCraw then opened the Bag and found what he described to be a "substantial chunk" of methamphetamine. Sergeant Bernat reentered Room 127, and the two officers discussed obtaining either consent to search or search warrants for the Hotel Rooms.

Officer McCraw spoke with Ms. Timmons, who explained that she and Defendant had been in the process of moving their things from Room 225 to Room 127. Officer McCraw asked Ms. Timmons if he could search her possessions. Ms. Timmons gave her consent, and Officer McCraw put the Bag down on a table near the front door of Room 127 while he searched her property. During the search, Ms. Timmons confirmed that she had stayed with

Defendant in Room 225 the night before and stated that she had not observed Defendant using or selling controlled substances. She also stated that a woman had come to the room, but she (Ms. Timmons) did not "see her do anything." After Officer McCraw finished searching Ms. Timmons' belongings, he picked the Bag up from the table.[5]

Officer McCraw then walked with a hotel employee to Room 225. While doing so, Officer McCraw informed the employee that he (Officer McCraw) "did not need to go in there." Upon seeing that the door to Room 225 was open, though, Officer McCraw walked into Room 225, stating "I'm just going to clear it, make sure there's no one in here." He looked into the bathroom, and immediately exited.

Back outside, Officer McCraw informed the hotel employee that officers would be getting a search warrant for the Hotel Rooms and communicated with other officers over his radio about the need to secure the Hotel Rooms. Sergeant Bernat joined Officer McCraw by the open door of Room 225. They stepped into Room 225 briefly, and continued to discuss whether officers were available to watch both rooms while they applied for a search warrant.[6]

---

[5] It appears that Officer McCraw carried the Bag with him throughout the remainder of the time he was present at the hotel.

[6] Officers were ultimately stationed outside of both Room 127 and Room 225.

6

Officer McCraw and Sergeant Bernat then exited Room 225, and Officer Bernat closed the door behind him. Officer McCraw continued to stand outside Room 225, and, while there, again opened the Bag and examined the contents.

At approximately 1:14PM, Defendant was placed in Officer Camp's patrol vehicle and transported to the Cleveland County Detention Center. A Receipt for Evidence and/or Property reflects that the Bag, a clear zip top bag containing "large shards of suspected methamphetamine," and a container holding eight zip top baggies of suspected methamphetamine were held by the Shelby Police Department as evidence.

### B. Discussion

Defendant contends that the warrantless search of the Bag was not justified as a search incident to arrest.

In response, the Government argues that the Bag was properly searched incident to Defendant's arrest and that, in any event, the contents of the Bag would have been discovered when the Bag was inventoried at the Cleveland County Detention Center.

### 1. Search Incident to Arrest

"As a general rule, the Fourth Amendment requires that law enforcement searches be accompanied by a warrant based on probable cause." United States v. Kolsuz, 890 F.3d 133, 137 (4th Cir. 2018). Warrantless searches and seizures – those "conducted outside the judicial process," without

7

prior approval by a judge or a magistrate – are *per se* unreasonable, subject only to a few well-established exceptions. <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967); <u>see also</u> <u>Kentucky v. King</u>, 563 U.S. 452, 459-60 (2011); <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 374 (1993).

A search incident to arrest is one of these exceptions and permits a search of "the arrestee's person and the area 'within his immediate control.'" <u>Davis v. United States</u>, 564 U.S. 229, 232 (2011) (quoting <u>Chimel v. California</u>, 395 U.S. 752, 763 (1969)); <u>see also</u> <u>Arizona v. Gant</u>, 556 U.S. 332 (2009); <u>United States v. Avagyan</u>, 164 F. Supp. 3d 864, 890 (E.D. Va. 2016) ("When officers have probable cause to arrest, they may conduct a full-body search, including pockets and clothing. No additional cause or reasonable suspicion is needed to justify this search.") (citing <u>United States v. Robinson</u>, 414 U.S. 218 (1973)); <u>United States v. Johnson</u>, No. 3:21cr29, 2022 WL 2373700, at *19-20 (E.D.Va. June 30, 2022) (a warrantless search of a container that is not located on an arrestee is "permissible as a search incident to arrest [only when] it [is] reasonable for" a police officer to believe that the individual being searched "could have accessed [the container] at the time of the search.") (quoting <u>United States v. Davis</u>, 997 F.3d 191, 198 (4th Cir. 2021) (quoting <u>Gant</u>, 556 U.S. at 343) (modification in <u>Johnson</u>)).

Here, the Government contends that the search of the Bag was permissible as part of the search of Defendant's person, while Defendant

argues that the Bag was outside of his immediate control at the time it was searched, such that the contents of the Bag should be suppressed pursuant to United States v. Davis, 997 F.3d 191 (4th Cir. 2021).

In Davis, the defendant fled the scene of a traffic stop in his car, and, after a high-speed pursuit into a residential area, exited the vehicle and ran into a swamp while carrying a backpack. After officers ordered him out of the swamp, the defendant complied, dropping his backpack and lying on his stomach, and was handcuffed. An officer then searched the defendant's backpack and found contraband. In concluding that the search of the backpack was unlawful, the Fourth Circuit explained that the search "was only permissible as a search incident to arrest if it was reasonable for [the officer] to believe that [the defendant] could have accessed the backpack at the time of the search." Davis, 997 F.3d at 197 (internal quotation marks omitted) (brackets added). In determining that the defendant was "secured and not within reaching distance of his backpack when [the officer] unzipped and searched it," the court noted that defendant had been ordered out of the swamp at gunpoint, was face down in handcuffs, was outnumbered three to one by the officers, and was in an area where no one else was around to distract the officers. Id. at 197; see also United States v. Jones, 2023 WL 4627284, at *14-15 (D. Md. July 18, 2023).

Here, when Defendant was arrested, the Bag was tucked into the back of Defendant's clothing, out of view, and was tied to the drawstring of Defendant's shorts by a black string wrapped around his body. After the Bag was pulled from Defendant's shorts, Sergeant Bernat cut the black string to detach the Bag.

Under these circumstances, because the Bag was located on Defendant's person when he was arrested, <u>Davis</u> does not apply, and the undersigned will recommend that the contents of the Bag not be suppressed. <u>See</u> <u>Johnson</u>, 2022 WL 2373700, at *19-20 (reasoning that a search of arrestee's cross-body bag "more closely mirror[ed] a search of clothing" such that the search of the bag was "a search incident to arrest of [defendant's] *person*, meaning <u>Davis</u> does not apply") (emphasis in <u>Johnson</u>); <u>see also</u> <u>United States v. McEachern</u>, 675 F.2d 618, 622 (4th Cir. 1982) ("The search of the wallet was incident to arrest and thus permissible."); <u>Robinson</u>, 414 U.S. at 235-236 (discovery and seizure of heroin capsules that were in an arrestee's pocket was lawful); <u>Gustafson v. Florida</u>, 414 U.S. 260, 262 & n. 2 (1973) (warrantless search of a cigarette box found in the front pocket of a coat arrestee was wearing during a search of his person, was *per se* reasonable under <u>Robinson</u> even though the search of the cigarette box occurred after the arrestee had been placed "in the back seat of the squad car").

10

## 2. Inevitable Discovery

The inevitable discovery doctrine permits the introduction of improperly seized evidence "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix. v. Williams, 467 U.S. 431, 444 (1984); see also United States v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017); United States v. Whitehorn, 813 F.2d 646, 650 (4th Cir. 1987). "'Lawful means' include searches that fall into an exception to the warrant requirement, 'such as an inventory search[ ] that would have inevitably uncovered the evidence in question.'" United States v. Seay, 944 F.3d 220, 223 (4th Cir. 2019) (citation omitted) (brackets in Seay).

"For the inventory exception to apply, the search must have 'be[en] conducted according to standardized criteria,' such as a uniform police department policy, and performed in good faith." United States v. Matthews, 591 F.3d 230, 235 (4th Cir. 2009) (quoting Colorado v. Bertine, 479 U.S. 367, 374 n. 6 (1987)) (alterations in Matthews; see also United States v. Wilbourne, No. 22-4452, 2023 WL 7319448 (4th Cir. Nov. 7, 2023) (unpubl.) ("Such a policy need not be in writing, nor must the government 'elicit step-by-step testimony concerning such a policy to meet its burden.' Instead, there must simply be sufficient evidence to show that law enforcement had a standard inventory procedure 'and would have inevitably discovered the challenged evidence by

11

conducting an inventory search according to routine and standard ... procedures.'") (internal citations omitted).

Cleveland County Detention Center policy provides that an admitting detention officer will frisk a "newly admitted inmate" and confiscate the inmate's personal property, including any belts, the contents of the inmate's pockets, and other items that are not clothing (including purses, backpacks, and key chains).

Additionally, Officer McCraw testified that, pursuant to the Shelby Police Department's standard operating procedures, an arrestee is searched upon arrest, possibly searched again before being transported to the Cleveland County Detention Center, and then searched again when he or she arrives at the Detention Center. There, jail staff meets the arrestee and the transporting officer in the sally port, where jail staff places the arrestee's property in a bag that is held by the transporting officer. Once the arrestee is seen by a magistrate, if the arrestee will be entering the jail facility, the bag is turned over to jail staff, who inventory the bag's contents. The arrestee's property is logged, and anything considered to be contraband or illegal is given to the transporting officer.

Officer McCraw also stated that in the event an arrestee is released on bond, any property that was in his or her pockets would be inventoried and then returned to the arrestee.

Defendant correctly points out that the officers did not inventory everything in Room 127; for example, the card Officer McCraw removed from Defendant's hand was not seized.

However, the undersigned is persuaded that, even if the Bag had not been searched at the time of Defendant's arrest, it would have been inventoried shortly after Defendant arrived at the Detention Center and its contents would have been discovered. See United States v. Wilbourne, No. 22-4452, 2023 WL 7319448 (4th Cir. Nov. 7, 2023) (unpubl.) (affirming district court's denial of motion to suppress firearm based on inevitable discovery doctrine where, after the defendant was arrested outside a store on an active state arrest warrant and handcuffed, police recovered defendant's backpack from inside the store and searched the backpack, in which a loaded firearm was found and explaining that "even if the [the police department] had not searched [the defendant's] backpack at the scene of his arrest, they still would have transported [the defendant] and his personal effects to the police station; searched the bags while filling out the property reports and characterizing the items as personal property or evidence; and inevitably discovered the firearm in the backpack" during a lawful inventory search); United States v. Wilder, 4:22-cr-433-RBH, 2023 WL 8242211, at *3 (D.S.C. Nov. 28, 2023) ("Officer Channani credibly testified that had he not searched the bag when he did, he would have taken the bag as Wilder's property to be transported to the Myrtle

Beach Police Department Jail. Because Wilder was unavoidably bound for the Myrtle Beach Police Department jail based on his possession of marijuana, pursuant to SOP S-118, Wilder's bag would have been inventoried and the firearm would have been inevitably discovered. Wilder's motion to suppress fails under the inevitable discovery doctrine").

## III. The Motion to Suppress-Hotel Rooms

### A. Relevant Background

Following Defendant's arrest and Officer McCraw's search of the Bag, Officer McCraw applied for a warrant authorizing a search of the Hotel Rooms for evidence of drug crimes. A state magistrate issued a warrant at 4:03PM the same day (the "Search Warrant," Doc. 28-1).

### B. Discussion

#### 1. Information in the Application

##### a. The Bag

Defendant contends that, when information regarding the Bag is excised from the Application (Doc. 28-1 at 6-7), probable cause did not exist for the issuance of the Search Warrant.

Defendant is correct that if the contents of the Bag are suppressed, that information would be excised from the Application, and the Court would then consider whether probable cause for issuance of the Search Warrant existed absent that information. See United States v. Walton, 56 F.3d 551 (4th Cir.

1995) (when determining whether illegally obtained information affected the decision to issue a search warrant, the district court must examine the search warrant affidavit absent the illegally obtained information and determine whether the untainted portion of the affidavit alone established probable cause); <u>United States v. Jones</u>, No. 3:17-CR-71, 2018 WL 935396, at *14 (E.D. Va. Feb. 16, 2018) ("When an affidavit for a warrant contains illegally obtained information, the reviewing court must first excise the tainted information") (citing <u>United States v. Gillenwaters</u>, 890 F. 2d 679, 681 (4th Cir. 1989)).

As discussed above, though, the undersigned is persuaded that the evidence from the Bag is admissible, and therefore this information was properly considered by the magistrate when determining whether the Search Warrant should be issued.

### b. The Sweep of Room 225

Additionally, Defendant asserts that there was "no legal justification" for Officer McCraw to enter Room 225, while the Government argues that Officer McCraw's entry into the room was justified as a protective sweep. <u>See Maryland v. Buie</u>, 494 U.S. 325, 326 (1990) ("A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.").

Here, the Application stated that Officer McCraw "cleared the room to ensure no one was inside so the room could be secured" pending a search warrant. While inside Room 225, Officer McCraw observed "a small, blue plastic baggie containing a chunk of brown, wet/sticky appearing substance" that he believed to be heroin, as well as several other empty blue plastic baggies in plain view. Doc. 28-1.

However, at the time Officer McCraw entered Room 225, Defendant was under arrest and handcuffed on the other side of the hotel and Officer McCraw had just left Ms. Timmons in Room 127. The door to Room 225 was open when Officer McCraw arrived but the Application did not indicate that he had seen anyone other than Defendant enter or exit Room 225 and the Application otherwise provided no basis for law enforcement to believe the room needed to be cleared in order to protect the safety of the officers. Further, to the extent Room 225 needed to be secured for evidentiary purposes, officers ultimately were stationed outside of the room while the Application was prepared and presented to the magistrate.

Accordingly, information regarding what Officer McCraw saw in Room 225 should be excised from the Application. See e.g., United States v. Owens, 782 F.2d 146, 151 (10th Cir. 1986) (once police arrest person in hallway outside his hotel room and retreat to safe area, justification for protective sweep evaporates).

16

## 2. Probable Cause

The next issue is whether the Application provided sufficient information to support the magistrate's determination that probable cause existed to justify a search of the Hotel Rooms. A decision by a magistrate to issue a search warrant is given "great deference"; reviewing courts ask "whether the magistrate had a substantial basis for finding probable cause." United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

"Probable cause requires only 'a fair probability,' and not a prima facie showing, that 'contraband or evidence of a crime will be found in a particular place.' Probable cause is therefore 'not a high bar.'" United States v. Bosyk, 933 F.3d 319, 325 (4th Cir. 2019) (quoting Gates, 462 U.S. at 238 and District of Columbia v. Wesby, 583 U.S. 48, 57 (2018)) (internal citations omitted). "An assessment of the presence of probable cause must be based on the totality of the relevant circumstances, rather than on the technical or rigid demands of a formulaic legal test." United States v. Glass, No. 5:21-CR-00060-KDB-DSC, 2023 WL 2844365, at *7 (W.D.N.C. Apr. 7, 2023).

Here, Officer McCraw stated in the Application that on February 23, 2023, he observed Defendant make multiple trips between the Hotel Rooms, and that Defendant appeared to be carrying items from one room to the other. Doc. 28-1 at 6.

17

Officer McCraw also advised that he had spoken with Ms. Timmons, who confirmed that she and Defendant were in the process of changing rooms. The Application also reported that Officer McCraw had spoken with a hotel employee, who indicated that she (the employee) had observed "a large amount of foot traffic coming and going" from Defendant's room the previous evening. Id. at 6, 7.

Further, Officer McCraw reported that a search of the Bag "yielded approximately 22 grams of a crystal substance that field tested positive for methamphetamine. Approximately 17 grams was located in a larger zip-top bag (these crystals were larger), and the remaining was divided into 8 smaller baggies." Officer McCraw also stated, based on his training and experience, that he knew this type of packaging was "common for the sale of controlled substances." Id. at 6.

Based on this information, the undersigned is persuaded that the Application (after details regarding what Officer McCraw observed in Room 225 are excised) provided probable cause to support the issuance of the Search Warrant.

### 3. The Good Faith Exception

The Government also argues that, even if the Search Warrant was legally deficient, the evidence seized from the Hotel Rooms should not be suppressed because it was obtained in good faith.

18

The decision of the Supreme Court in <u>United States v. Leon</u>, 468 U.S. 897 (1984) "teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" <u>United States v. Bynum</u>, 293 F.3d 192, 195 (4th Cir. 2002) (quoting <u>Leon</u>, 468 U.S. at 922 n.23).

"This 'good faith' exception will be applied except in four limited situations: (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a 'rubber stamp' for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid." <u>United States v. Wellman</u>, 663 F.3d 224, 228–29 (4th Cir. 2011) (citing <u>United States v. Doyle</u>, 650 F.3d 460, 467 (4th Cir. 2011) (quoting <u>United States v. DeQuasie</u>, 373 F.3d 509, 519–20 (4th Cir. 2004)).

Here, Ms. Timmons' statement that she had not observed any drug-related activity the previous evening should have been included in the Application. However, there is no indication that Officer McCraw knowingly or recklessly included false information in the Application.

19

Similarly, there is no indication that the magistrate failed to serve as a neutral and detached decisionmaker or that the warrant was "facially deficient."

Finally, although the Application could have included more details, the information that was provided, including that Defendant was in and out of both Hotel Rooms, that a hotel employee reported a large amount of foot traffic the night before, and that a large amount of methamphetamine (some of which appeared to be packaged for resale) was found on Defendant's person, was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Cf. United States v. Barker, No. 1:21-CR-70-MR-WCM, 2022 WL 1498201 (W.D.N.C. April 21, 2022) (although information contained in a search warrant application did not establish probable cause, it did support use of the good faith exception to the exclusionary rule), report and recommendation adopted, 2022 WL 1494993 (W.D.N.C. May 11, 2022).

## IV.  Recommendation

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Suppress-Bag (Doc. 27) be **DENIED**, and Defendant's Motion to Suppress-Hotel Room (Doc. 28) be **DENIED**.

Signed: May 23, 2024

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(B), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).